RECEIVED

JAN 2 5 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

MARK RICHARD WALTERS )
            *PLAINTIFF* )
                                               )
                                               )
v.                                        )        NO. _____
                                               )
LASALLE CORRECTIONS, JOHN DOE 1,    )
JOHN DOE 2, JOHN DOE 3,  R.N. VICTOR    )
DURAN, LVN LOPEZ                       )
            *DEFENDANTS*                  )
                                               )
                                               )

**EP22CV0035**

JUDGE KATHLEEN CARDONE

## COMPLAINT & JURY DEMAND

### I. PARTIES

1.     Mark Walters, herein "Plaintiff" files this suit in his individual capacity. Plaintiff is a resident of the state of Texas and a citizen of the United States. At all times herein, Plaintiff was a detainee of the U.S. Marshall Service housed at the West Texas Detention Center – WTDC.

2.     Defendant LaSalle Corrections, herein "LaSalle" is a private prison under contract with the U.S. Marshall's Service. LaSalle is a corporation licensed to do business in the state of Texas. Defendant may receive service of process by certified mail addressed: WARDEN SHEPPARD, c/o LaSalle Corrections, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

3.     Defendant John Doe 1, herein "Doe 1" is sued in his individual capacity. Doe 1 is a resident of the state of Texas and a citizen of the United States. Doe 1 will not be identified until initial discovery is conducted, and once he is identified service may be completed via certified mail addressed: WARDEN SHEPPARD, c/o LaSalle Corrections, 401 Vaquero

Avenue, Sierra Blanca, Texas 79851.

4.       Defendant John Doe 2, herein "Doe 2" is sued in his individual capacity. Doe 2 is a resident of the state of Texas and a citizen of the United States. Doe 2 will not be identified until initial discovery is conducted, and once he is identified service of process may be completed via certified mail addressed: WARDEN SHEPPARD, c/o LaSalle Corrections, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

5.       Defendant John Doe 3, herein "Doe 3" is sued in his individual capacity. Doe 3 is a resident of the state of Texas and a citizen of the United States. Doe 3 will not be identified until initial discovery is conducted, and once he is identified service of process may be completed via certified mail addressed: WARDEN SHEPPARD, c/o LaSalle Corrections, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

6. Defendant R.N. Victor Duran, herein "Duran" is sued in his individual capacity. Duran is a resident of the state of Texas and a citizen of the United States. Service of process on Duran may be completed via certified mail addressed: VICTOR DURAN, c/o LaSalle Corrections, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

7. Defendant LVN Lopez, herein "Lopez" is sued in his individual capacity. Lopez is a resident of the state of Texas and a citizen of the United States. Service of process on Lopez may be completed via certified mail addressed: LOPEZ, LVN, c/o LaSalle Corrections Medical Clinic, 401 Vaquero Avenue, Sierra Blanca, Texas 79851.

## II. VENUE

8.       The United States District Court for the Western District of Texas is the appropriate venue for hearing this complaint as all claims alleged herein occured in this District.

## III. JURISDICTION

9.    Jurisdiction to hear a federal claim is proper before a United States District Court pusuant to *42 U.S.C. Section 1983*. Additionally, this Court has supplemental jurisdiction to hear state law claims pursuant to *28 U.S.C. Section 1367*.

## IV. FACTS

10.    Plaintiff was assigned to the WTDC by the U.S. Marshall Service on November 12, 2021.

11.    The WTDC is operated by Defendant LaSalle under contract with the Marshall Service to house Plaintiff until the disposition of a federal criminal charge alleged against him.

12.    When Plaintiff arrived at the WTDC on November 12, 2021, an intake process included a medical evaluation which was conducted by Amy Vasquez, R.N. At this time Plaintiff informed the nurse that he started experiencing pain in his left shoulder a week prior.

13.    As a regular part of the intake process, Plaintiff was to be examined by a "provider" within the next week. Plaintiff understood the word "provider" to mean a doctor.

14.    Plaintiff, arrived at the WTDC with a presciption for Tylenol and ibuprofen for the shoulder pain. It was Plaintiff's understanding that the medication would be continued until he was examined by the provider within the next week.

15.    The medication helped relieve the should pain and although it did not make Plaintiff pain free, it did provide a better quality of life.

16.    On November 16th, 2021 the Tylenol and ibuprofen prescription that Plaintiff arrived at the WTDC with was suddenly discontinued by the LaSalle medical clinic without Plaintiff

being provided any advance warning. Plaintiff had not yet been examined by a provider and no date was given to him as to when this appointment would be and a new pain management plan implimented.

17.    Plaintiff submitted a sick call on November 17th to see a provider about the pain that he was experiencing in his shoulder.

18.    On or about November 22nd Plaintiff was examined by provider Desiree Medina at which time Plaintiff explained his overall health with this provider, including the shoulder pain that he was having. Medina was to prescribe Plaintiff Tylenol and ordered an x-ray of his shoulder.

19.    Plaintiff was prescribed Tylenol for his shoulder pain which he started receiving 2 days later on November 23rd.

20.    Plaintiff went 7 days without receiving any pain reliver for the shoulder pain that he was having.

21.    On Thanksgiving day, November 25th, Plaintiff dislocated his left shoulder at approximately 10 a.m. while getting out of his bunk. This dislocation caused extreme pain and discomfort.

22.    At approximately 10:30 a.m. when Plaintiff's daytime housing officer -Doe 1- was making his rounds, Plaintiff informed Doe 1 that his shoulder was dislocated and that he needed to see someone in the medical department.

23.    Doe 1 was deliberately indifferent to Plaintiff's serious medical need and informed Plaintiff that he would need to submit a sick call and he would be seen by a medical provider the next day.

24.    Doe 1, after disregarding Plaintiff's serious medical need, provided Plaintiff with a

sick call and a grievance form. Plaintiff filled out the sick call and Doe 1 placed it in the medical sick call box outside of Plaintiff's housing area.

25.   Plaintiff continued to suffer extreme pain and discomfort due to the dislocation throughout the day while waiting on medical staff to evaluate him.

26.   During the afternoon, Doe 1 went on break and was relieved by Doe 2, who was now Plaintiff's housing officer.

27.   Plaintiff informed Doe 2 that he had a serious medical need: that his left shoulder was dislocated and that he had to see medical staff. Plaintiff was infomed by Doe 2 that because it was Thanksgiving day no provider would be on the unit until after the holiday weekend.

28.   After Doe 2 disregarded Plaintiff's serious medical needs, Plaintiff was provided another sick call form by Doe 2 which he filled out and gave back to Doe 2 to put in the sick call box outside the housing unit.

29.   At approximately 7:30 p.m. Plaintiff's first sick call was responded to by Defendant, Registered Nurse, Victor Duran, who Plaintiff informed that he had a dislocated shoulder and was in extreme pain. Duran disregared Plaintiff's serious medical need and never performed a hands on physical of Plaintiff's shoulder, only informed him that no provider would be available until after the holiday weekend.

30.   The evening security officer for Plaintiff's housing unit, Doe 3, was present for Plaintiff's conversation with Duran. After being denied medical care by Duran, Plaintiff asked Doe 3 to contact someone who could send Plaintiff to the hospital, but again Plaintiff's serious medical need was disregarded.

31.   The deliberate indifference shown to Plaintiff by Defendants Doe 3 and Duran compounded both the mental and physical anquish Plaintiff was suffering from. Plaintiff,

being incarcerated has no option to get medical care from any other source other than from Defendants. The conscious disregard for Plaintiff's serious medical need by all Defendants named herein is unconscionable and inhumane.

32.     At approximately 10:30 p.m., more than 12 hours since Plaintiff dislocated his shoulder, Defendant, LVN Lopez, administered pill call to Plaintiff's housing unit. Plaintiff informed Lopez and Doe 3 that his shoulder was dislocated and that he needed a doctor or something for the pain. Plaintiff was again rebuffed and denied medical treatment and informed for the 5th time that day that no provider was available.

33.     The follwing day, 21 hours after Plaintiff dislocated his shoulder, R.N. Vasquez answered Plaintiff's second sick call. She performed a hands-on examination of Plaintiff's left shoulder and immediately recognized that Plaintiff had an anterior dislocation and that Plaintiff needed emergency care in a hospital. Her medical record notes that there was an "obvious deformity to the left shoulder."

34.     Plaintiff was rushed to Del Sol Medical Center, an almost 80 mile drive from the Detention Center, and finally, 25 hours after the shoulder dislocation, was admitted to the hospital and examined by a doctor. The doctor tried a couple of times to manipulate the shoulder into place and finally on the third painful attempt was able to put the joint back into place. If this third try failed, the doctor was prepared to sedate Plaintiff and force the shoulder back into place using a greater amount of physical force.

35.     This entire episode of manipulating the shoulder back in place was extremely painful and agonizing.

36.     The x-ray taken in the emergency room showed that Plaintiff had a fracture in a prosthesis in the shoulder. Plaintiff had a total shoulder replacement 2 years prior in which

the replacement was expected to last 15-20 years. A total shoulder replacement is an exstensive and extreme medical procedure not performed regularly by orthopedic surgeons due to its complexity.

37.    Throughout the 25 hours that Plaintiff's shoulder was dislocated, he lost feeling in his left hand and has since developed pain in the humerus and the clavical on the left side of his body.

38.    LaSalle scheduled Plaintiff to see an orthopedic surgeon in El Paso during the month of December. Plaintiff remained in pain and discomfort thoughout the month of December wnd was only provided ibuprofen twice a day as a pain manager.

39.    The month of December came and went without Plaintiff being examined by an orthopedic surgeon. It took well over a month since the shoulder was dislocated and the fracture in the medical devise before he was finally examined by an othopedist in the month of January.

40.    Due to the gross negligence Defendant LaSalle, by and through its employees in the medical clinic, the surgeon that Plaintiff was evaluated by did not perform shoulder surgeries such as what Plaintiff required. Plaintiff instead had to receive a referal to see another surgeon and then wait additional weeks to visit a properly qualified orthopedist.

41.    The second surgeon verified the fracture in the prosthesis in Plaintiff's shoulder and recommened surgery at the soonest available time. Moreover, it is the surgeon's position, as verified in the medical records, that the prolonged dislocation was the proximate cause of the prosthesis failure which ultimately led to Plaintiff needing a painful surgical procedure.

42.    ll throughout this time of Plaintiff's wait he experienced pain and discomfort which Defendant knew and disregarded, treating him only with ibuprofen twice a day. On 2

occassions from November 25, 2021 through January 15, 2022, the ibuprofen was unexpectedly discontinued and Plaintiff had to go without any pain relief for 3-4 days.

## V.
## COUNT 1

### VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL & UNUSUAL PUNISHMENT

43.    Plaintiff incorporates by reference paragraphs 1 through 42    as if each paragraph is printed herein.

44.    Plaintiff alleges that Defendants LaSalle, Does 1, 2, 3, Duran and Lopez, individually and or collectively, violated his Eighth Amendment right by their deliberate indifference to Plaintiff's serious and obvious medical need.

45.    Plaintiff dislocated his shoulder at 10 a.m. on Thanksgiving Day and during a 12 hour period, informed 3 security officers - Does 1, 2, and 3- and 2 nurses -Duran and Lopez- of the serious medical issue that he was suffering from, and they failed to respond causing Plaintiff unnecessary infliction of pain.

46.    Moreover, 25 hours passed before Plaintiff's shoulder was reset by an emergency room doctor, thus prolonging the unnecessary pain that Plaintiff had incurred.

47.    These Defendants, individually and or collectively, knew and disregarded Plaintiff's serious medical need, thus causing Plaintiff to sustain a fracture in his shoulder prosthesis. Plaintiff now requires a painful surgery to repair the damage that was proximately caused by the acts and omissions of the Defendant's failure to act.

48.    Defendants Duran and Lopez, specifically, having medical training, disregarded Plaintiff's cries for medical attention, refused to either treat Plaintiff themselves or inform security that Plaintiff required immediate treatment at an emergency room. Moreover, both

Duran and Lopez, licensed nurses in the state of Texas, failed to perform a hands on examination of Plaintiff when he informed them of his dislocated shoulder.

49.     Defendants, individually and/or collectively, refused to treat Plaintiff and ignored his complaints that he required medical attention.

50.     Plaintiff's medical records show that from November 12th, when he arrived at the WTDC, until November 25th, that he was experiencing shoulder pain. Additionally, the records note that on November 12th, that Plaintiff has "a history of shoulder dislocation."

51.     The Defendant prison personnel knew of Plaintiff's history of dislocated shoulders and disregarded his plea for help with the dislocation experienced on Thanksgiving Day.

52.     Plaintiff had an x-ray of his left shoulder taken 3 weeks prior to the dislocation while temporarily assigned to the Eden Detention Center. The medical records from the radiologist states that no fractures of the shoulder were present.

53.     It was the deliberate acts and omissions in letting Plaintiff's shoulder remain dislocated for 25 hours that was the proximate cause for the fissure in his shoulder which now requires surgery.

54.     Defendant prison officials violated Plaintiff's Constitutional rights to be free from cruel and unusual punishment by being deliberately indifferent when they disregarded his complaints to his serious medical need.

## COUNT 2
## NEGLIGENT HIRING

55.     Plaintiff incorporates by reference paragraphs 1 through 54 as if each paragraph is printed herein.

56.     The acts and omissions of Defendant LaSalle for negligent hiring of Does 1, 2, and 3

is the proximate cause of Plaintiff's pain, suffering, and fracture of his prosthesis in his left shoulder.

57.    Does 1, 2, and 3 were unqualified or under qualified to make a medical evaluation of the most basic type: observing Plaintiff's protruding shoulder joint.

58.    Defendant LaSalle has a legal duty under the Constitution of the United States to hire, supervise, train, and retain competent employees, but failed to do so. Defendant hired employees without checking to their requirements in basic first aid, and moreover, LaSalle does not offer first aid training and instructions on how to address medical needs of detainees, including Plaintiff, other than having employees provide sick call request forms.

59.    LaSalle's negligent conduct breached it's Constitutional duty to ensure that Does 1, 2, and 3 were qualified to make basic medical assessments which created an unreasonable risk of harm to Plaintiff.

60.    Upon Plaintiff's arrival at the WTDC, he signed a medical release form which provides security personnel such as Does 1, 2, and 3, to legally review his medical records. On Thanksgiving Day, Defendants could have avoided the unnecessary risk of harm to Plaintiff by reviewing his medical records to verifiy that he has a "history of shoulder dislocation" and that over the past 19 days his medical records had 10 notations to shoulder pain.

61.    The willful and reckless acts and omissions by LaSalle to not train Does 1, 2, and 3 that they have legal clearance to confirm Plaintiff's medical history breaches its legal duty to ensure that LaSalle met its Constitutional duty.

62.    The lack of training and re-training Does 1, 2, and 3 in making basic medical evaluations created a risk of harm to Plaintiff that in this case prolonged the duration of

Plaintiff's untreated dislocated shoulder, which medical records show was the proximate cause of the fracture in his shoulder prosthesis, thus requiring a painful surgery and rehabilitation.

## COUNT 3
## NEGLIGENT TRAINING

63.    Plaintiff incorporates by reference paragraphs 1 through 62 as if each paragraph is printed herein.

64.    The acts and omissions by Defendant LaSalle in properly training Does 1, 2, and 3 on basic first aid and medical evaluations breaches it's Constitutional duty to ensure that Plaintiff is free from cruel and unusual punishment.

LaSalle oversees the medical care of Plaintiff and has a duty to ensure that staff -Does 1, 2, and 3- are properly trained to respond to emergency medical needs. Plaintiff went 21 hours with a dislocated shoulder and informed the above referenced Defendants of his urgent medical need. The only medical training that LaSalle mandates for Does 1, 2, and 3 is a CPR certification.

65.    This breaches LaSalle's duty to meet the health, medical and welfare needs of the Plaintiff. This breach of duty to provide basic medical training with Does 1, 2, and 3 to make medical evaluations that such as basic sight and touch tests is the proximate cause of Plaintiff's fractured prosthesis and required surgery.

66.    Does 1, 2, and 3 are trained to look for contraband on the persons that they detain, including Plaintiff. They are also trained to do "pat down" searches that require them to touch Plaintiff's torso, and limbs. The training of Does 1, 2, and 3 to perform a medical sight and

touch evaluation of detainees to make a basic medical decision breaches LaSalle's Constitutional duty to Plaintiff and this negligent training proximately caused Plaintiff's injury.

## COUNT 4
## GROSS NEGLIGENCE,
## OR IN THE ALTERNATIVE, NEGLIGENCE

67.   Plaintiff incorporates by reference paragraphs 1 through 66 as if each paragraph is printed herein.

68.   The acts and omissions of Does 1, 2, 3, Duran, and Lopez were grossly negligent to Plaintiff's serious medical need when they disregarded his safety and welfare.

69.   Defendant's caused an extreme risk to Plaintiff by their conscious indifference to his medical need. The noticeable protrusion of the dislocated joint caused subjective awareness with each Defendant, individually and or collectively, that there was a high probability that serious harm could occure to Plaintiff. The Defendants each disregarded the extreme risk thus causing Plaintiff physical pain, intentional mental anguish and a possibility of a life long handicap.

70.   Plaintiff is a detainee in a detention facility and has no option but to rely on Defendants for his serious medical needs, such as a dislocated shoulder. Defendants have a duty to ensure that Plaintiff's medical needs are met, this includes sending him to an emergency room when a serious medical need arises. It was proven by nurse Vasquez, 21 hours after the shoulder dislocation that this injury required immediate treatment outside of the detention facility.

71.   Defendant's breached their duty when Does 1, 2, 3, Duran, and Lopez, employees of

LaSalle, failed to send Plaintiff to a medical provider that could treat him. This breach of duty cause Plaintiff extreme pain and discomfort which ultimately led Plaintiff to require surgery, and future pain and suffering.

72.    Defendant's failure to timely act is the proximate cause for Plaintiff's fracture of the previously implanted shoulder prosthesis.

73.    Due to the acts and omissons of Defendant's breach of duty, the gross negligence of Defendants, Plaintiff has suffered damages: both economical and non-economical.

74.    In the alternative the acts and omissons of Defendant's breach of duty, the negligence of Defendants, Plaintiff has suffered damages: both economical and non-economical.

## COUNT 5
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.    Plaintiff incorporates by reference paragraphs 1 through 74 as if each paragraph is printed herein.

76.    Plaintiff has a right to be treated with deceny and humanely, and Defendants, individually and or collectively, each acted recklessly when they failed to respond to his sincere and obvious medical need.

77.    The protrusion of Plaintiff's shoulder joint was obvious by the senses of sight and touch, but Defendant's failure to act was both outrageous and extreme. Does 1, 2, and 3 should have used any medical training they had, or if lacking medical training they should have sought medical advice from the medical clinic or nurses on staff Thanksgiving Day.

78.    The outrageousness of both Duran and Lopez, licensed healthcare providers, to not only conduct a hands on evaluation of Plaintiff, but they didn't even visually look at the

pronounced bulge in the shoulder joint, as his injury was so later noted by nurse Vasquez that there was an "obvious deformity to the left shoulder."

79.    The willful recklessness by the Defendants to not treat Plaintiff's serious medical need caused undue and extreme pain, multiple doctor visits, a pending shoulder surgery, and weeks of physical rehabilitation.

80.    This emotional distress has caused Plaintiff weight loss, sleeplessness, diagnosed PTSD, anxiety and the need to be prescribed hydoxyzin.

81.    Plaintiff is a detainee and has no control over the doctors that he sees, the timing of any surgery, and thenumber of times that he may attend physical therapy, thus causing extreme anxiety, and an overall feeling of emotional distress.

82.    Plaintiff has been a competitive amateur athlete his entire adult life, participating on league softball teams, bike racing, triathlons, and in golf touraments. The severe emotional distress that weighs on Plaintiff is substantial since he does not know if the shoulder surgery required to fix his shoulder will permit him to engage in these activities ever again.

83.    The acts and omissions by the Defendants, individuall and or collectively, in thier reckless disregard to Plaintiff's medical need for more than 24 hours was an intentional infliction of emotional distress. The atrocious acts by Defendants is not tolerable in a civilized society, even to a detainee. Plaintiff's Constitutional rights "do not stop at the prison gates."

84.    The severe emotional distress has cause physical ailments to Plaintiff which further adds to his emotional distress.

## COUNT 6
## MENTAL ANGUISH

85.    Plaintiff incorporates by reference paragraphs 1 through 84 as if each paragraph is printed herein.

86.    Defendants LaSalle, Does 1, 2, 3, Duran and Lopez, individually and or collectively, caused Plaintiff mental anguish when they failed in their Constitutional duty to and protect Plaintiff's Constitutional righs to be free from cruel and unusual punishment.

87.    The physical injury of the fractured prosthesis has caused substantial anxiety, sleeplessness, weightloss, and PTSD that has disrupted Plaintiff's daily routines. Plaintiff has found himself required to wear a sling/immobilizer to support his shoulder for more than 2 months with many more months post-surgery, which interferes with fundamental tasks such as eating, showering, socializing with others for fear of getting bumped into by someone, going to the restroom, and able to perform upper body exercises. Plaintiff, a life-long athlete found this to serve the greatest amount of anguish since exercise provides the greatest amount of relief from the daily disappointment of being detained and having his freedom limitated.

88.    The serious physical injury which is whown to be the direct result of the prolonged shoulder dislocation, which was disregarded by Does 1, 2, 3, Duran and Lopez when they breached their duty to care for Plaintiff's health and welfate. Their acts and omissions created deficiencies in Plaintiff's daily tasks and most baic human needs.

89.    To add worse  to wear, Plaintiff was only provided ibuprofen twice a day to address the pain that he was experiencing. On December 19th, he was informed that he would be placed in solitary confinement if he wanted ibuprofen 3 times/day. Solitary confinement is an

isolated existance: no-one to talk to, a cold cess with no tv's or radios, the occassional book that is being passed from cell to cell, and a single compined toilet and sink.

90.    This treat of solitary confinement frightened Plaintiff and he chose to only take the ibuprofen 2 times per day. Plaintiff purchased his own ibuprofen from the commissary and paid other detainees to purchase the medication for him too.

91.    Since Plaintiff dislocated his shoulder, Defendant used mutliple methods to mentally torrment him, including discontinuing his ibuprofen on January 11th with no advance warning, leaving Plaintiff with no pain management except to the few ibuprofen that he was able to purchase himself.

92.    The sleepless nights, 13 pound weight loss in the two months after the injury, nausea that was constantly in his stomach due to the anxiety and worry played a heavy toll on Plaintiff's day to day existence.

93.    Defendants, individually and or collectively, through their Constitutional violations of Plaintiff, gross negligence, negligence, negligent hiring, negligent training, and intentionally infliction of emotional distress individually and or combined caused Plaintiff mental anquish.

## VI.
## DECLARATORY RELIEF

94.    Plaintiff incorporates by reference paragraphs 1 through 93 as if each paragraph is printed herein.

95.    Based on the reckless and willful acts and ommissions of Defendant's, LaSalle, does 1, 2, 3, Duran, and Lopez, Plaintiff seeks a declaration that the Defendants, individually and or collectively, violated his rights under the color of law pusuant to *42 U.S.C section 1983.*

## VII.
## DAMAGES

96.     Based on the contents of this complaint, Plaintiff seeks the following damages:

ECONOMIC DAMAGES

97.     Plaintiff's current pecuniary loss is approximately $70but expects this amount to increase throughout his detention and upon his release as he will incure medical and other healthcare costs.   Once the total pecuniary loss is calculated, Plaintiff will amend his complaint.

NON-ECONOMIC DAMAGES

98.     Plaintiff seeks non-economic camages for pain and suffering, mental anquish, inconvienience, loss of enjoyment of life, and any other non-economic damages that he may be so entitled to from each Defendant, individually and or collectively.

EXEMPLARY DAMAGES

99.     Plaintiff seeks exemplary damates against each Defendant indvidually in the following amounts:

| | |
|---|---|
| LaSalle Corrections: | $100,000 |
| Doe 1: | $35,000 |
| Doe 2: | $35,000 |
| Doe 3: | $35,000 |
| Victor Duran, R.N: | $40,000 |
| Lopez, LVN: | $40,000 |

100.    In addition to economic, non-economic, and exemplary damages, Plaintiff seeks

prejudgment interest on any amounts awarded him.

## VII.
## ATTORNEY FEES & COSTS

101.   Plaintiff is filing his complaint *pro se*, but in the event that he hires an attorney at any time before the conclusion of this action, Plaintiff will seek the recovery of any attorney fees and or other costs that he may be so entitled to.

## IX.
## JURY DEMAND

102.   Plaintiff reques that his case be tried by a jury.

## X.
## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully asks this HONORABLE COURT for the following relief:

1. A declaration that Defendants, individually and or collectively, violated Plaintiff's rights under *42 U.S.C section 1983*.

2. Plaintiff seeks a finding that Defendant Corrections engaged in negligent hiring practices.

3. Plaitiff seeks a finding that Defendant  LaSalle Corrections engaged in negligent training of Does 1, 2, and 3.

4. Plaitiff seeks a finding that Defendants individually and or collectively were grossly negligent throught their breach of duty that was the proximate cause of Plaintiff's injury.

5. Plaintiff, in the alternative, seek a find that Defendants, individually and or collectively, were negligent throught thier breach of duty that was the proximate cause of

Plaintiff's injury.

6. Plaintiff seeks a finding that Defendants, individually and or collectively, intentionally inflicted emotional distress upon Plaintiff.

7. Plaintiff seeks a finding that the acts and omissios of the Defendants, individually and or collectively, cause Plaintiff mental anguish.

8. Plaintiff's economic damages are currently on-going.

9. Plaintiff seeks non-economic damage in an amount set by the court or jury for violating his Constitutional rights; negligent hiring; negligent training; goss negligence; negligence; intentional infliction of emotional distress; and mental anguish in the amount of $150,000.

10. Plaintiff seeks exemplary damages  against each Defenant individually in the following amounts:

| | |
|---|---|
| LaSalle Corrections: | $100,000 |
| Doe 1: | $35,000 |
| Doe 2: | $35,000 |
| Doe 3: | $35,000 |
| Victor Duran, R.N: | $40,000 |
| Lopez, LVN: | $40,000 |

11. Plaintiff seeks attorney fees and any other costs that he may be so entitled to.

12. Plaintiff seeks pre-judgment interests.

13. Plaintiff seeks any other relief that he may be so entitled to.

Respectfully submitted,

*Mark Walters*

Mark Walters #30934004
c/o WTDC
P.O. Box 430
Sierra Blanca, Texas 79851