**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **MARK RICHARD WALTERS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-22-CV-00035-KC-ATB** |
| | § | |
| **LASALLE CORRECTIONS, JOHN DOE** | § | |
| **1, JOHN DOE 2, JOHN DOE 3, R.N.** | § | |
| **VICTOR DURAN, and LVN LOPEZ,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE MAGISTRATE JUDGE**

On this day, the Court considered Defendant's "Motion to Dismiss and Brief in Support" (ECF No. 26), filed by Defendants LaSalle Correction V, LLC ("LaSalle"), R.N. Victor Duran ("Duran"), and LVN Lopez ("Lopez") (collectively "Named Defendants"). The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.

# I.    BACKGROUND

### a.    Procedural Background

Plaintiff Mark Richard Walters ("Walters"), proceeding *pro se* and *in forma pauperis*, filed his Complaint on February 2, 2022, alleging claims against multiple Defendants surrounding his medical care in November 2021. (ECF No. 3).

On April 1, 2022, the Named Defendants filed the instant Motion seeking the dismissal of Walters's Complaint. (ECF No. 26). After this Court granted Walters's Motion for an Extension of Time to file a response on April 19, 2022 (ECF No. 27, 28), Walters filed his "Plaintiff's

Response in Opposition to Defendants' Motion to Dismiss" ("Response") on May 10, 2022 (ECF No. 34).  On May 16, 2022, the Court granted by Text Order the Named Defendants' Unopposed Motion for Extension of Time to File Reply, and the Named Defendants filed their "Reply to Plaintiff's Response to Motion to Dismiss" ("Reply") on June 1, 2022.  (ECF No. 42).

> **b.    Factual Background[1]**

Walters is currently in the custody of the United States Marshals and is incarcerated at the West Texas Detention Center ("WTDC").  (ECF No. 3, p. 1).  In his Complaint, Walters alleges constitutional and state law claims against multiple defendants.  Walters's allegations surround the medical care, or lack thereof, for his dislocated and fractured shoulder.  Walters asserts that Defendant LaSalle "is a private prison under contract with the U.S. Marshall's [sic] Service."  (*Id.* at p. 1).  Further, Walters alleges that "[t]he WTDC is operated by Defendant LaSalle under contract with the Marshal[] Service to house [Walters] until the disposition of the federal criminal charge alleged against him."  (*Id.* at p. 3).  Walters brings claims against Defendants John Doe 1, John Doe 2, John Doe 3, Duran, and Lopez (collectively "Individual Defendants") in their individual capacities as employees of LaSalle.  *See* (*id.* at p. 1-2, 12-13).

First, Walters alleges that all Defendants, "individually and or collectively, violated his Eighth Amendment right by their deliberate indifference to [his] serious and obvious medical need."  (*Id.* at p. 8).  Specifically, "[o]n Thanksgiving [D]ay, November 25th," 2021, Walters asserts that he "dislocated his left shoulder at approximately 10 a.m. while getting out of his bunk" and that "[t]his dislocation caused extreme pain and discomfort."  (*Id.* at p. 4).  About thirty minutes later, Walters informed his daytime housing officer, Defendant John Doe 1, "that his shoulder was dislocated and that he needed to see someone in the medical department."  (*Id.*).

---

[1] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

Walters asserts that Defendant John Doe 1 was deliberately indifferent to his serious medical need since Defendant John Doe 1 "disregard[ed] Walters's injury and only "provided [Walters] with a sick call and grievance form."  (*Id.* at p. 4-5).  After Walters filled out the form, Defendant John Doe 1 "placed it in the medical sick call box outside of [Walters's] housing area."  (*Id.* at p. 5).

 After an afternoon shift change, Walters informed the new housing officer, Defendant John Doe 2, "that his shoulder was dislocated and that he had to see medical staff."  (*Id.*).  Walters alleges that Defendant John Doe 2 told Walters that "no provider would be on the unit until after the holiday weekend."  (*Id.*).  Defendant John Doe 2 provided Walters with another sick call form, which Defendant John Doe 2 returned to the sick call box outside the housing unit.  (*Id.*).

"At approximately 7:30 p.m.," Walters alleges that his "first sick call was responded to by Defendant . . . Duran, who [Walters] informed that he had a dislocated shoulder and was in extreme pain."  (*Id.*).  Walters alleges that "Duran disregarded [Walters's] serious medical need and never performed a hands on physical of [Walters's] shoulder, only informed him that no provider would be available until after the holiday weekend."  (*Id.*).

Further, while Walters was speaking with Duran, the evening security officer, Defendant John Doe 3, was present.  (*Id.*).  Walters alleges that after Duran denied him medical care, Walters asked Defendant John Doe 3 "to contact someone who could send [Walters] to the hospital, but again [Walters's] serious medical need was disregarded."  (*Id.*).  Walters alleges that "[t]he deliberate indifference shown to [him] by Defendants [John] Doe 3 and Duran compounded both the mental and physical anguish [Walters] was suffering from."  (*Id.*).

"At approximately 10:30 p.m., more than 12 hours since [Walters] dislocated his shoulder," Walters alleges that Defendant Lopez "administered pill call to [Walters's] unit."  (*Id.* at p. 6).  At this time, Walters "informed Lopez and [Defendant John] Doe 3 that his shoulder was dislocated

3

and that he needed a doctor or something for the pain," but was "again rebuffed and denied medical treatment and informed for the 5th time that day that no provider was available." (*Id.*).

Walters alleges on the following day that a nurse provided a hands-on examination of his shoulder and "immediately recognized that [Walters] had an anterior dislocation and that [Walters] needed emergency care in a hospital." (*Id.*). Walters asserts that the nurse's medical records note that there was an "obvious deformity to the left shoulder." (*Id.*). Therefore, Walters "was rushed to Del Sol Medical Center," where a doctor "manipulate[d] the shoulder into place and finally on the third painful attempt was able to put the joint back into place." (*Id.*). Walters further alleges that "[t]he x-ray taken in the emergency room showed that [Walters] had a fracture in a prosthesis in the shoulder." (*Id.*).

Defendant "LaSalle scheduled [Walters] to see an orthopedic surgeon in El Paso during the month of December," but he was not examined by an orthopedist until "the month of January." (*Id.* at p. 7). Walters alleges that "[d]ue to the gross negligence [of] Defendant LaSalle, . . . the surgeon that [Walters] was evaluated by did not perform shoulder surgeries such as what [Walters] required," but "instead [Walters] had to receive a referral to see another surgeon and then wait additional weeks to visit a properly qualified orthopedist." (*Id.*). The second surgeon "verified the fracture in the prothesis in [Walters's] shoulder and recommended surgery at the soonest available time." (*Id.*). Walters further alleges that the second surgeon opined "that the prolonged dislocation was the proximate cause of the prosthesis failure which ultimately led to [Walters] needing a painful surgical procedure." (*Id.*).

Walters alleges that throughout the time he waited for the surgery, "he experienced pain and discomfort which Defendant knew and disregarded, treating him only with ibuprofen twice a day." (*Id.*). However, Walters notes that "[o]n 2 occasions from November 25, 2021 through

4

January 15, 2022, the ibuprofen was unexpectedly discontinued and [Walters] had to go without any pain relief for 3-4 days." (*Id.* at p. 7-8).

Further, Walters alleges that Defendant LaSalle was negligent in hiring Defendants John Does 1, 2, and 3, since they "were unqualified or under qualified to make a medical evaluation of the most basic type: observing [Walters's] protruding shoulder joint." (*Id.* at p. 9-10). Walters also alleges that LaSalle breached its "duty to provide basic medical training with Does 1, 2, and 3 to make medical evaluations [like] basic sight and touch tests," which "is the proximate cause of [Walters's] fractured prosthesis and required surgery."

Further, Walters alleges that the Individual Defendants were grossly negligent, or in the alternative negligent, "when they disregarded [Walters's] safety and welfare" regarding his shoulder injury. (*Id.* at p. 12-13). Walters also alleges that the Individual Defendants' "acts and omissions . . . in their reckless disregard to [Walters's] medical need for more than 24 hours was an intentional infliction of emotional distress." (*Id.* at p. 14).

Finally, Walters asserts that all the Defendants, "individually and or collectively, caused [Walters] mental anguish when they failed in their Constitutional duty to . . . protect [Walters's] Constitutional righs [sic] to be free from cruel and unusual punishment." (*Id.* at p. 15).

## II.    LEGAL STANDARDS

### a.    Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544 570 (2007)). The factual matter

contained in the complaint must allege actual facts, not legal conclusions masquerading as facts. *Id.* at 678 (citing *Twombly*, 550 at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted). A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

**b.      Judicial Screening**

Title 28 U.S.C. § 1915 states, in relevant part, that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Further, the Court may *sua sponte* dismiss on these grounds

even without serving the defendants. *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) ("Dismissal [under § 1915] is 'often made *sua sponte* prior to issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints'" (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989))).[2]

To determine whether an *in forma pauperis* complaint fails to state a claim on which relief may be granted, courts engage in the same analysis as when ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Davis v. Lumpkin*, --- F.4th ---, 2022 WL 1791945, at *2 (5th Cir. 2022).

## III.   ANALYSIS

In his Complaint, Walters alleges constitutional and state law claims against multiple defendants. While the Named Defendants argue that Walters's claims against them should be dismissed, the Named Defendants argue that "[t]his Court should also dismiss all claims against the unserved John Does," since "it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to similarly-situated defendants." (ECF No. 26, p. 20) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)). In his Response, Walters argues that "in the interest of justice, the Court should not dismiss [the John Doe] Defendants without allowing [Walters] an opportunity to substitute the John Does with the actual employees. (ECF No. 34, p. 20).

Here, the Court finds Walters's arguments unpersuasive. The Court finds that granting limited discovery to identify the John Doe Defendants by name is not necessary here, since Walters is able to identify the alleged acts and omissions of the John Doe Defendants that give rise to his

---

[2] *See also Jones v. Smith*, 234 F. App'x 249, 250 (5th Cir. 2007) (per curiam) (citing *Carr v. Dvorin*, 171 F.3d 15, 116 (2d Cir. 1999) (per curiam)) (stating that service on defendants is not required before dismissing an action for failure to state a claim).

claims.  Furthermore, the Court finds that the Named Defendants and the John Doe Defendants are similarly situated.  Therefore, the Court finds that granting the Named Defendants Motion to Dismiss without dismissing the John Doe Defendants would be "incongruous" and "unfair."  *See Lewis*, 236 F.3d at 768.

Alternatively, the Court finds that it has authority to engage in judicial screening of the John Doe Defendants in accordance with 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Title 28 U.S.C. § 1915 states, in relevant part, that "the court shall dismiss the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2) (emphasis added).  The Court may even *sua sponte* dismiss on these grounds without serving the John Doe Defendants.  *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991); *Solis v. Barber*, No. 3:20-CV-00765-E (BT), 2021 WL 6495006, at *4 (N.D. Tex. Dec. 16, 2021) (conducting judicial screening and recommending dismissal of a John Doe defendant).

Accordingly, the Court will address Walters's constitutional claims and state law claims against all Defendants, including the unserved John Does.

As for his constitutional claims, Walters alleges that all Defendants, "individually and or collectively, violated his Eighth Amendment right by their deliberate indifference to [his] serious and obvious medical need."  (*Id.* at p. 8).  Walters also "seeks a declaration that the Defendants, individually and or collectively, violated his rights under the color of law."  (*Id.* at p. 16).  Walters also brings the following state law claims: (1) negligent hiring and (2) negligent training claims against Defendant LaSalle; [3] (3) gross negligence, or in the alternative negligence, and (4)

---

[3] The Court notes that Walters asserts in his Complaint that Defendant LaSalle "has a legal duty under the Constitution of the United States to hire, supervise, train, and retain competent employees" and that LaSalle's alleged negligent hiring and training "breaches LaSalle's Constitutional duty to [Walters]."  (ECF No. 3, p. 10-12).  However, in his Response, Walters asserts that "[f]or clarification, liberally construing [Walters's] [C]omplaint, allegations [regarding negligent hiring and training claims] in Counts 2 & 3 are common law torts."  (ECF No. 34, p. 10).  Therefore, the Court will construe Walters's claims of negligent hiring and negligent training as state law claims, not constitutional claims.

intentional infliction of emotional distress against the Individual Defendants; and (5) mental anguish claims against all Defendants (collectively "State Law Claims").  (*Id.* at p. 9-16).

Accordingly, the Court will address Walters's constitutional claims and his remaining State Law Claims in turn.

      a.     ***Bivens* and § 1983**

The applicable law for Walters's constitutional claims depends on whether or not Defendants acted under color of state law at the time of the alleged incidents as prescribed in 42 U.S.C. § 1983.  A person who "acts 'under color' of state 'statute, ordinance, regulation, custom, or usage'" can be held liable under § 1983 for violating a person's rights under the Constitution or federal law.  *Richardson v. McKnight*, 521 U.S. 399, 403 (1997) (quoting 42 U.S.C. § 1983); *see also Doe v. United States*, 831 F.3d 309, 314 & n.3 (5th Cir. 2016) (discussing the ways in which courts may deem a person to be a state actor).  A person who acts under color of federal law, on the other hand, cannot be held liable under § 1983.  *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017).  However, a person acting under color of federal law may be held liable for violating a person's constitutional rights in certain circumstances under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Privately-operated detention center employees can act under the color of either state or federal law, because "maintaining a jail may at times be both a federal and state function."  *Doe v. Neveleff*, No. A-11-CV-907-LY, 2013 WL 489442, at *14 (W.D. Tex. Feb. 8, 2013), *report and recommendation adopted*, No. A-11-CV-907-LY, 2013 WL 12098684 (W.D. Tex. Mar. 12, 2013).  Courts have found that privately-operated detention centers operate under color of state law when such facilities have a "contractual relationship with the state."  *Fabian v. Dunn*, No. SA-08-cv-269-XR, 2009 WL 2461207, at *6 (W.D. Tex. Aug. 6, 2009) (citing *Gallien v. Corr. Corp.*, 91

F.3d 140 (5th Cir. 1996) (per curiam)); *see also Cherry v. Geo Grp., Inc.*, No. DR-19-CV-051-AM-VRG, 2020 WL 9209941, at *5 (W.D. Tex. May 29, 2020), *report and recommendation adopted*, No. DR-19-CV-0051-AM, 2021 WL 1398974 (W.D. Tex. Mar. 18, 2021).  Courts have also found that such facilities operate under color of federal law when in contract with the federal government.  *Rowland v. Sw. Corr., LLC*, No. 4:20-CV-00847-ALM-CAN, 2021 WL 4206409, at *8-11 (E.D. Tex. Aug. 17, 2021) (collecting cases), *report and recommendation* adopted, No. 4:20-CV-847, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021).  Additionally, courts have held that the custody status of the detainee dictates the status of the detention facility and its employees.  *See id.*; *Tavares v. LaSalle Corr. Emerald Corr. Mgmt. W. Tex. Det. Ctr.*, No. EP-17-CV-00289-PRM-RFC, 2018 WL 2452977, at *2 (W.D. Tex. May 31, 2018), *report and recommendation adopted*, No. 3:17-CV-00289-PRM-RFC (W.D. Tex. Aug. 22, 2018) (order adopting report and recommendation.).

Walters's Complaint indicates an intent to sue Defendants, as a privately-operated detention center and as employees of a privately-operated detention center, under 42 U.S.C. § 1983.  *See* (ECF No. 3, p. 1-2).  However, Walters has not provided the Court with sufficient information to indicate how Defendants were behaving as state actors at the time of the alleged incidents.  Further, based on the Complaint, the Court is unable to infer that LaSalle had a contractual relationship with the state regarding Walters's detention.[4]

---

[4] The Court notes that Walters alleges in his Response that "Defendant LaSalle has engaged in a *manage' a trois* [sic] with the Marshal Service and Hudspeth County, where Hudspeth County owns the detention facility and LaSalle is entrusted with its operations to hold federal detainees.  It is [Walters's] understanding that LaSalle is a state actor under the terms of its contract with the County."  (ECF No. 34, p. 6) (footnote omitted).  The Court further notes that Walters "makes this claim based on Defendants['] § 1983 argument."  (*Id.* at p. 6 n.7).

However, Walters never asserts this allegation in his Complaint.  *See* (ECF No. 3).  The Court must only consider the facts contained in the Complaint and any proper attachments, but not any new factual allegations made outside the Complaint.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments . . . .  Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint . . . .");

In fact, Walters clearly states that he "was a detainee of the U.S. Marshall [sic] Service" and that LaSalle "is a private prison under contract with the U.S. Marshall's [sic] Service." (*Id.* at p. 1). Based on the information provided in Walters's Complaint, the Court finds that Defendants behaved as federal, not state, actors at the time of the alleged incidents. *See Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam); *Eltayib v. Cornell Companies Inc.*, 533 F. App'x 414, 414-15 (5th Cir. 2013) (per curiam); *Sandoval v. Wackenhut Correctional Corp.*, 21 F.3d 1109, 1994 WL 171703, at *2 n.3 (5th Cir. Apr. 28, 1995) (per curiam) ("Because

---

*Shobney v. Sessions*, No. EP-17-CV-00234-DCG, 2018 WL 1915490, at *2 (W.D. Tex. Apr. 23, 2018) (declining to consider plaintiff's new allegations in response to motion to dismiss).

Furthermore, the Court declines to construe Walters's new factual allegations as a motion for leave to amend the Complaint. *See Jaraba v. Blinken*, --- F. Supp. 3d ---, 2021 WL 5144733, at *8 (W.D. Tex. 2021) ("Although the Court may not consider allegations contained only in Plaintiffs' Response Brief on a motion to dismiss, it may choose to construe new factual statements as a motion for leave to amend the complaint."). In his Response, Walters includes a "Leave to Amend" section where he states, in relevant part: "Plaintiff will be seeking leave of Court to file an amended complaint to add [] claims [against Duran and Lopez under the Texas Medical Liability Act,] but believes waiting until this Court has ruled on Defendants' motion to dismiss is in the best interest of the parties and Court." (ECF No. 34, p. 21). Walters further asserts that "[w]aiting to file permits Plaintiff to review the Court's 12(b)(6) decision and correct deficiencies in the original complaint noted by the Court and to add information that is revealed through discovery." (*Id.*).

The Court finds that Walters clearly states that his Response *should not* be construed as a motion for leave to amend, since Walters instead prefers to file a motion for leave to amend *after* "this Court has ruled on Defendants' motion to dismiss." (*Id.*). Therefore, the Court finds that Walters knows how to amend his Complaint should he choose to do so, but Walters has decided against amending his Complaint at this time in order "to review the Court's 12(b)(6) decision and correct deficiencies in the original complaint noted by the Court and to add information that is revealed through discovery." (*Id.*). Walters could have amended his Complaint to include any new factual allegations prior to filing his Response, but instead chose to respond on the merits to Defendants' Motion to Dismiss. *See* Fed. R. Civ. P. 15(a)(1) (giving plaintiff the right to amend their complaint 21 days after serving it or 21 days after service of a motion under Rule 12(b)); (ECF No. 34) (Walters's Response filed 39 days after Defendants' Motion to Dismiss).

Furthermore, in their Motion, the Defendants do not allege, describe, or otherwise suggest that LaSalle has any relationship with Hudspeth County. Defendants' § 1983 arguments, on which Walters relies for his position that LaSalle has a relationship with Hudspeth County, are instead arguments in the alternative should the Court analyze Walters claims under § 1983. *See* (ECF No. 26, p. 6-10); (ECF No. 42, p. 7).

Therefore, the Court finds that Walters repeated allegations in his complaint and arguments in his Response that Defendants are "state actors" to be no more than legal conclusions. Accordingly, since courts must consider the factual matter contained in the complaint and not legal conclusions masquerading as facts, the Court finds that Walters has alleged in his Complaint that LaSalle had a contractual relationship with the United States Marshal Service to detain Walters and were therefore acting under color of federal law. *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

[plaintiff] was a federal prisoner in the facility, which [defendant] was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved."); *see also Rowland*, 2021 WL 4206409, at *8-11.  Accordingly, the Court will analyze Walters's constitutional claims under the *Bivens* standard instead of §1983.[5]

### b.    Walters Does Not Have a Cognizable *Bivens* Claim Against Any Defendant

In *Bivens*, the Supreme Court authorized a damages remedy, "even absent statutory authorization," where a federal actor violated a person's Fourth Amendment protections against unreasonable searches and seizures. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397).  The Supreme Court later held that such an implied remedy also exists under the Fifth Amendment Due Process Clause and the Eighth Amendment Cruel and Unusual Punishments Clause.  *Id.* at 1854-55 (citing *Davis v. Passman*, 442 U.S. 228, 231, 248-49 (1979) (regarding the Fifth Amendment, and *Carlson v. Green*, 446 U.S. 14, 16-23 (1980) (regarding the Eighth Amendment)).

Outside these cases, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).  In fact, the Supreme Court has held that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity."  *Abbasi*, 137 S. Ct. at 1857.

A new context for *Bivens* exists "[i]f the case is different in a meaningful way from previous *Bivens* cases."  *Abbasi*, 137 S. Ct. at 1859.  However, courts shall not extend *Bivens* to a new context if "special factors counsel[] hesitation in the absence of affirmative action by Congress."  *Bivens*, 403 U.S. at 396.  This "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the

---

[5] Therefore, the Court will not address Defendants' arguments as to whether Walters has failed to state a claim on the merits under § 1983.  *See* (ECF No. 26, p. 6-10).

costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857-58. The special factors inquiry is important because "it is a significant step under separation-of-powers principles for a court to determine that it has the authority . . . to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation," as opposed to Congress doing so. *Id.* at 1856.

Moreover, private entities acting under color of federal law may not be held liable under *Bivens*. *Malesko*, 534 U.S. at 66. Nor can individual employees of such private entities be held liable under *Bivens* when there is an adequate remedy available under state tort law. *Minneci v. Pollard*, 565 U.S. 118, 130-31 (2012). Regarding the adequacy of an alternative remedy, "the question is whether, in general, state tort law remedies provide roughly similar incentives for potential defendants to comply with the [U.S. Constitution] while also providing roughly similar compensation to victims of violations." *Id.* at 130.

### 1. *Claims Against Defendant LaSalle*

In his Complaint, Walters alleges that LaSalle . . . individually and or collectively [with the individual Defendants] violated his Eighth Amendment right by their deliberate indifference to [Walters's] serious and obvious medical need." (ECF No. 3, p. 8). Walters also "seeks a declaration that Defendants, individually and or collectedly, violated his rights under the color of law." (ECF no. 3, p. 16).

Here, the Court finds that Walters's *Bivens* claims against Defendant LaSalle are barred by *Correctional Services Corp v. Malesko*, 534 U.S. 61 (2001). In *Malesko*, the Supreme Court clearly held that the Supreme Court's prior decision in *FDIC v. Meer*, 510 U.S. 471 (1994) "forecloses the extension of *Bivens* to private entities." *Malesko*, 534 U.S. at 66 n.2. Defendant LaSalle is a private detention facility acting under color of federal law, and therefore cannot be

13

held liable under *Bivens*.  Accordingly, the Court recommends that any *Bivens* claims against Defendant LaSalle be dismissed for failure to state a claim.[6]

### 2.    *Claims Against Defendants Duran, Lopez, and John Does 1, 2, and 3*

As discussed above, based on Walter's Complaint, the Court finds that at the time of the alleged incidents, Defendants Duran, Lopez, and John Does 1, 2, and 3 acted under color of federal law and as private employees of LaSalle.  *See* (ECF No. 3, p. 12-13) ("Does 1, 2, 3, Duran, and Lopez, employees of LaSalle . . . .").  To determine whether each individual Defendant can be held liable under *Bivens* depends first on whether each of Walters's claims fall within the existing purview of *Bivens*, and if not, whether an extension of *Bivens* is warranted under the special factors analysis. *Abbasi*, 137 S. Ct. at 1860.  If *Bivens* applies or an extension is warranted, then the Court must determine whether Walters has an adequate remedy available to him under state tort law. *Minneci*, 565 U.S. at 130-31.

In his Complaint, Walters alleges that Defendants "Does 1, 2, 3, Duran and Lopez, individually and or collectively, violated his Eighth Amendment right by their deliberate indifference to [Walters's] serious and obvious medical need."  (ECF No. 3, p. 8). Walters also "seeks a declaration that Defendants, individually and or collectedly, violated his rights under the color of law."  (ECF No. 3, p. 16).

Although Walters alleges his deliberate indifference claims are a violation of his Eighth Amendment right, the Court notes that his rights as a federal pretrial detainee "flow from the Fifth Amendment due-process clause and not the Eighth Amendment."  *Belfrey-Farley v. Palmer*, No. 3:19-CV-1305-S-BT, 2021 WL 2814885, at *2 (N.D. Tex. May 7, 2021); *see Morgan v. Patterson*,

---

[6] Given that Walters's constitutional claims against LaSalle are barred by *Malesko*, the Court finds that it need not address Named Defendants' arguments in their Motion to Dismiss regarding the merits of Walters's constitutional claims against LaSalle.

No. 2:17-CV-160, 2017 WL 7732439, at *6 n.4 (S.D. Tex. Aug. 8, 2017) ("Deliberate indifference claims made by federal pretrial detainees . . . are cognizable under the Fifth Amendment's Due Process Clause."); *see also Bell v. Wolfish*, 441 U.S. 520 (1979);  *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("[A] pretrial detainee's constitutional claims are considered under the due process clause instead of the Eighth Amendment.").   Therefore, construing Walters's Complaint liberally as a *pro se* plaintiff, the Court will analyze Walters's deliberate interference claims under the Fifth Amendment.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *see also Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016) ("Further, the Supreme Court held that when a complaint contains sufficient '*factual* allegations,' a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'") (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (emphasis original)).

The Court finds that Walters's constitutional claims present a new *Bivens* context as they are meaningfully different from previous *Bivens* cases.  Although a *Bivens* remedy has been permitted under the Fifth Amendment, the Court notes that it was done under different facts; specifically, a gender discrimination claim in the context of an employment dispute.  *See Davis*, 442 U.S. at 231, 248-49; *Biron v. Upton*, No. 4:15-CV-205-P, 2020 WL 85146, at *6 (N.D. Tex. Jan. 7, 2020) (collecting cases distinguishing new Fifth Amendment contexts for *Bivens*).  The Court finds that the facts of the instant case fit closer to the facts of *Carlson*, regarding deliberate indifference to a prisoner's medical needs under the Eighth Amendment.  *See Carlson*, 446 U.S. at 16.

However, in addition to different constitutional rights at issue, the defendants in *Carlson* were federal prison officials, while Defendants here are prison housing officers and nurses at a private detention facility.  *Compare id.*, *with* (ECF No. 3, p. 1-2).  In fact, the Supreme Court and

the Fifth Circuit have declined to extend *Bivens* to deliberate indifference to medical needs claims against employees of private prisons. *See, e.g.*, *Minneci*, 565 U.S. at 131 (declining to extend *Bivens* to Eighth Amendment deliberate indifference claims against employees of a privately operated federal prison); *Rroku v. Cole*, 726 F. App'x 201, 206 (5th Cir. 2018) (declining to extend *Bivens* to Fifth Amendment medical care claims against private employees at federal ICE facility run by GEO); *see also Webb v. McQuade*, EP-21-CV-00254-DCG-ATB, 2022 WL 136464, at *4 (W.D. Tex. Jan. 14, 2022) (holding that "individual employees of [private entities cannot] be held liable under *Bivens* when there is an adequate remedy available under state tort law"); *Villanueva v. United States*, No. EP-19-CV-00232-FM-ATB, 2020 WL 1234943, at *8 (W.D. Tex. Mar. 13, 2020) (no *Bivens* action available against a physician not employed by federal government and is instead party to a contract to provide medical care to prisoners (collecting cases)). Accordingly, the Court finds that Walters's constitutional claims against the individual Defendants are meaningfully different and therefore present a new *Bivens* context. *See Abbasi*, 137 S. Ct. at 1859-60 ("[D]ifferences that are meaningful enough to make a given context a new one," include: "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . [and] the statutory or other legal mandate under which the officer was operating.").

The Court further finds that an extension of *Bivens* to the new context of Walters's constitutional claims is not warranted under the special factors analysis. This "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857-58. The Supreme

Court has held that "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Id.* at 1857.

Most relevant to the instant case, the Court finds that other remedies are available to address Walters's deliberate indifference claims. Specifically, Walters may bring his claims as state tort claims against the individual Defendants. The Supreme Court has held, in relevant part that:

> where . . . a federal prisoner seeks damages from privately employed personnel working at privately operated federal prison, where the conduct allegedly amounts to a violation of the Eighth Amendment, and where that conduct is of a kind that typically falls within the scope of traditional state tort law (such as the conduct involving improper medical care at issue here), the prisoner must seek a remedy under state tort law.

*Minneci v. Pollard*, 565 U.S. 118, 131 (2012); *see also Malesko*, 534 U.S. at 72-73 ("[F]ederal prisoners in private facilities enjoy a parallel tort remedy that is unavailable to prisoners housed in Government facilities."). Even if the Court were to extend *Bivens* to Walters's claims, the availability of the state tort remedy would preclude the Court from holding the individual Defendants liable under *Bivens*. *See Minneci*, 565 U.S. at 130-31. Therefore, the Court finds that Walters does not have a *Bivens* claim against Defendants Duran, Lopez, and John Does 1, 2, and 3, since extending *Bivens* is disfavored when Walters already has an adequate alternative remedy for his claims, namely state tort law. Accordingly, the Court recommends dismissing Walters's constitutional claims against these defendants for failure to state a claim upon which relief may be granted.

    **c.**    **This Court Does Not Have Original Jurisdiction to Hear Walters's State Law Claims**

The Court now considers whether it may hear Walters's remaining State Law Claims against Defendants. Walters brings the following State Law Claims: (1) negligent hiring and (2) negligent training claims against Defendant LaSalle; (3) gross negligence, or in the alternative

17

negligence, and (4) intentional infliction of emotional distress against the Individual Defendants; and (5) mental anguish claims against all Defendants.  (ECF No. 3, p. 9-16).

"Federal Courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Energy Management Services, LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  In general, federal courts have (1) "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," (28 U.S.C. § 1131) ("federal question jurisdiction"), and (2) "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States" (28 U.S.C. § 1132(a)) ("diversity jurisdiction").  *See Energy Management Services*, 739 F.3d at 259.

Here, since Walters's Complaint does not implicate a federal question, the Court finds that the only basis for this Court's original jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1132.  First, the Court notes that Walters is a resident of the State of Texas.  (ECF No. 3, at p. 1).  In his Complaint, Walters alleges that Defendant LaSalle is a corporation licensed to do business in the State of Texas, but, in his Response, Walters asserts that LaSalle is "an organization registered with the Texas Comptrolers [sic] office, but created by its principal, LaSalle Corrections, which is based in Ruston, Louisiana."  *Compare* (*id.*), *with* (ECF No. 34, p. 20).  However, the Court notes that Walters identifies Defendants Duran, Lopez, and John Does 1, 2, and 3 in his Complaint as individuals who are residents of the State of Texas.  (ECF No. p. 1-2).  Thus, the Court finds that Walters shares the same state citizenship with multiple Defendants, and therefore complete diversity is lacking in the instant case.  *See Vela v. Manning*, 469 F. App'x 319,

320 n.2 (5th Cir. 2012) ("Although the [plaintiff] stated for the first time in their response to the motion to dismiss that one defendant was from [a different state,] such an allegation (even if procedurally proper) still fails to satisfy the complete diversity requirement . . . Without complete diversity, this suit cannot proceed under 28 U.S.C. § 1332(a)."). Accordingly, the Court recommends dismissing Walter's remaining state tort claims since it does not have jurisdiction to hear Walters's State Tort Claims.[7]

> ### d.     This Court Does Not Have Supplemental Jurisdiction to Hear Walters's State Law Claims

In his Complaint, Walters asserts that this Court "has supplemental jurisdiction to hear state law claims pursuant to 28 U.S.C. § 1367." (ECF No. 3, p. 3). Title 28 U.S.C. § 1367 states, in relevant part, that "in any civil action of which the district courts *have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §1367(a) (emphasis added).

As discussed above, the Court does not have original jurisdiction over any claim in Walters's Complaint. The Court lacks original jurisdiction over any federal question claims since Walters's constitutional claims fail to state a claim under *Bivens*, and the Court lacks original jurisdiction over Walters's State Law Claims since there is no diversity of citizenship between Walters and Defendants. Accordingly, the Court finds that it does not have supplemental jurisdiction to hear any of Walters's claims.

---

[7] Since the Court finds that it does not have jurisdiction over Walters's State Law Claims, the Court need not address the merits of such claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Walters's Complaint fails to state a claim upon which relief may be granted as to his constitutional claims, and that his Complaint should be dismissed for want of jurisdiction as to his State Law Claims.   Accordingly, the Court **RECOMMENDS** that:

- Defendants' "Motion to Dismiss and Brief in Support" (ECF No. 26) be **GRANTED**, and therefore Walters's claims against Defendants LaSalle, Duran, and Lopez be **DISMISSED**.

- Walters's claims against the unserved John Doe Defendants 1, 2, and 3 be **DISMISSED**.

**SIGNED** and **ENTERED** this 21st day of June, 2022.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**